Nicolai Cocis, CA Bar No. 204703
nic@cocislaw.com
Law Office of Nicolai Cocis
25026 Las Brisas Road
Murrieta, CA 92562
(951) 695-1400 (phone/facsimile)

Mathew D. Staver*
court@LC.org
Horatio G. Mihet*
hmihet@LC.org
Roger K. Gannam*
rgannam@LC.org
Daniel J. Schmid*
dschmid@LC.org
Liberty Counsel
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
(407) 875-0770 (facsimile)
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| | |
|---|---|
| HARVEST ROCK CHURCH, INC., and HARVEST INTERNATIONAL MINISTRY, INC., itself and on behalf of its member churches in California,<br><br>*Plaintiffs*,<br><br>v.<br><br>GAVIN NEWSOM, *in his official capacity as* Governor of the State of California,<br><br>*Defendant*. | **Case No. 2:20-cv-06414**<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO NOTICE OF DEFENDANT'S INTENT TO FILE AN OPPOSITION AND REQUEST FOR DELAYED HEARING**<br><br>**The Honorable Jesus G. Bernal**<br>Hearing Date: Dec. 8, 2020 2:00 PM |

1

**PLAINTIFFS' RESPONSE IN OPPOSITION TO NOTICE OF DEFENDANT'S INTENTION TO FILE AN OPPOSITION AND REQUEST FOR DELAYED HEARING**

Plaintiffs, Harvest Rock Church, Inc. and Harvest International Ministries, Inc., on behalf of itself and its member Churches, hereby submit the following Response in Opposition the Defendant's Notice of Intent to File an Opposition to Plaintiffs' Motion for TRO and Preliminary Injunction and request to delay the December 8, 2020 hearing. (Dkt. 61, "Response".) For the following reasons, Defendants' request should be denied.

### A. Delaying The Hearing Only Further Imposes The Irreparable Harm From Which Plaintiffs Seek Relief.

The Governor contends that this Court should delay the hearing on Plaintiffs' Emergency Motion for a TRO and Preliminary Injunction (dkt. 58) to allow the Governor to submit additional evidence and argumentation. (Dkt. 61, Response at 2.) Such a delay would only impose the very irreparable harm that the Supreme Court found in *Roman Catholic Diocese v. Cuomo*, No. 20A87, 2020 WL 694835 (U.S. Nov. 25, 2020). There, the Court stated unequivocally: "There can be no question that the challenged restrictions, if enforced, will cause irreparable harm." *Catholic Diocese*, 2020 WL 6948354, at *3. Indeed, "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

In fact, the Governor's Response and requests for further delay only enhances the need for this Court's prompt intervention. Here, as was true in the New York case, "this reply only advances the case for intervention" because "**[t]o turn away religious leaders bringing meritorious claims . . . would be, in my view, just another sacrifice of fundamental rights in the name of judicial modesty**." *Id.* (emphasis added).

> It is easy enough to say it would be a small thing to require the parties to "refile their applications" later. . . . But none of us are rabbis wondering whether future services will be disrupted as the High Holy Days were, or priests preparing for Christmas. **Nor may we discount the burden on the faithful who have lived for months under New York's unconstitutional regime unable to attend religious services**. **Whether this Court could decide a renewed application promptly is beside the point. The parties before us have already shown their entitlement to relief**. Saying so now will establish clear legal rules and enable both sides to put their energy to productive use, rather than devoting it to endless emergency litigation. Saying so now will dispel, as well, misconceptions about the role of the Constitution in times of crisis, which have already been permitted to persist for too long,

*Id.* at *7 (emphasis added). *See also id.* at *9 (Kavanaugh, J., concurring) ("There is no good reason to delay issuance of the injunctions . . . issuing the injunctions now rather than a few days from now [will] ensure the applicant's constitutional rights are protected.").

**B. The Supreme Court's Order Granting Certiorari, Vacating This Court And The Ninth Circuit's Denials Of Injunctive Relief, And Mandating Reconsideration Of The TRO And Preliminary Injunction Requires This Court To Apply The New Rule From *Catholic Diocese*.**

As a practical matter, the Court's Grant, Vacate, and Remand ("GVR") Order in the instant proceedings is indicative of the sea change that *Catholic Diocese* worked in the ever-expanding COVID-19 litigation challenging prohibitions and restrictions on religious gatherings. Until *Catholic Diocese* was issued, courts throughout the country – including the Supreme Court itself – had issued conflicting rulings as to whether discriminatory treatment of religious gatherings as compared to so-called "Essential" businesses was subject to strict scrutiny during a perceived emergency or pandemic. *Compare Catholic Diocese*, 2020 WL 694835 at *3-4; *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020); *First Pentecostal Church v. City of Holly Springs*, 959 F.3d 669 (5th Cir. 2020) (all

3

holding that discriminatory restrictions on religious worship were subject to and could not survive strict scrutiny), *with South Bay United Pentecostal Church v. Newsom,* 140 S. Ct. 1613 (2020); *Calvary Chapel Dayton Valley v. Sisolak,* No. 19A1070, 2020 WL 4251360 (U.S. July 24, 2020); *Harvest Rock Church*, 977 F.3d 728 (9th Cir. 2020); *South Bay United Pentecostal Church v. Newsom*,959 F.3d 938 (9th Cir. 2020); *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341 (7th Cir. 2020) (all taking a more deferential approach and erroneously applying *Jacobsen v. Massachusetts*, 197 U.S. 11 (1905) to uphold discriminatory restrictions on religious gatherings during a perceived emergency).

However, *Catholic Diocese* settled the debate. There, the High Court held unequivocally that COVID-19 restrictions, such as those at issue here, "cannot be viewed as neutral because they single out houses of worship for especially harsh treatment." 2020 WL 6948354, at *2. And, because they failed the test of neutrality, they were subject to strict scrutiny and could not survive it. *Id.* That decision worked a sea change in the manner in which COVID-19 restrictions (or, total prohibitions as those at issue here) must be scrutinized under the First Amendment. Indeed, as Justice Gorsuch noted: "It is time—past time—to make plain that, while the pandemic poses many grave challenges, there is no world in which the Constitution tolerates color-coded executive edicts that reopen liquor stores and bike shops but shutter churches, synagogues, and mosques." *Id.* at *7 (Gorsuch, J., concurring).

The Governor's only response to the clear import of *Catholic Diocese* to the instant matter is that the Supreme Court did not grant a similar injunction in Plaintiffs' appeal, but instead remanded to this Court for further consideration. (Dkt. 61, Response at 2.)

4

But, the fact that the High Court did not grant an injunction is unremarkable in light of the sea change and new rule that this Court must follow from *Catholic Diocese*. In fact, GVR orders are common when the Supreme Court has issued an intervening decision that is dispositive of the Court's precedent to be applied in pending litigation. Indeed, that is the very purpose of a GVR Order. *See Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001) (noting that a GVR order "indicated that, in light of intervening developments, **there was a reasonable probability that the Court of Appeals would reject a legal premise on which it relied and which may affect the outcome of the litigation**." (emphasis added)).

The practice of using GVR orders to resolve non-final litigation is based in judicial economy, and is a correct way to permit parties, such as Plaintiffs here, to obtain the necessary relief from the lower courts when the Supreme Court has issued a decision fundamentally altering the applicable precedent to issues active in current litigation. *Lawrence v. Chater*, 516 U.S. 163, 167 (1996) ("a GVR order conserves the scarce judicial resources of this Court that might otherwise be expended on plenary consideration [and] assists the court below by flagging a particular issue that does not appear to have been fully considered"). As the Supreme Court has acknowledged, "[a]s a practical matter, of course, we cannot hear each case pending on direct review and apply the new rule. **But we fulfill our judicial responsibility by instructing lower courts to apply the new rule retroactively to cases not yet final**." *Griffin v. Kentucky*, 479 U.S. 314, 326 (1987) (emphasis added). *See also Lawrence*, 516 U.S. at 167 (same).

> Where intervening developments or recent developments that we have reason to believe the court below did not fully consider, reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it

> appears that such a redetermination may determine the ultimate outcome of the litigation, a GVR order is, we believe, potentially appropriate.

*Lawrence*, 516 U.S. at 167.

The fact that the Court issued a GVR in this instance does not change the fact that *Catholic Diocese* mandates the application of strict scrutiny in this case and a finding that the Governor's total prohibitions on Plaintiffs' religious worship services are unconstitutional under the First Amendment. (*See* dkt. 58-1, Memorandum in Support of TRO and Preliminary Injunction, at 7-18.) Indeed, the Supreme Court has issued to this and every other court a roadmap that leads to one destination – that the restrictions on churches and places of worship in California violate the First Amendment Free Exercise Clause. Indeed, the restrictions in the case before this Court are worse than those enjoined in *Catholic Diocese.* The Supreme Court left no room for a different outcome based on some epidemiological opinion. The fact remains that the discriminatory treatment of places of worship in the Governor's orders, and particularly his Blueprint, must be enjoined. This case has been thoroughly briefed and a clear Supreme Court decision controls the outcome. The Supreme Court's precedent must be applied now to stop continuing irreparable harm.

## CONCLUSION

The Governor's attempts to evade review in the instant matter should be rejected, the hearing held on December 8 as scheduled, and the TRO and preliminary injunction should issue forthwith. The Governor's contentions to the contrary only increases "the risk of the 'justice delayed' that means 'justice denied.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 112 (Breyer, J., concurring).

6

Respectfully submitted,

/s/ Nicolai Cocis
Nicolai Cocis, CA Bar No. 204703
nic@cocislaw.com
Law Office of Nicolai Cocis
25026 Las Brisas Road
Murrieta, CA 92562
Phone/Facsimile: (951) 695-1400

/s/ Daniel J. Schmid
Mathew D. Staver*
court@LC.org
Horatio G. Mihet*
hmihet@LC.org
Roger K Gannam*
rganname@LC.org
Daniel J. Schmid*
dschmid@LC.org
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 328854
Phone: (407) 875-1776
Facsimile: (407) 875-0770

*Pro Hac Vice Admission Pending

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Case Name: *Harvest Rock Church, Inc. et. al. v. Newsom*    Case No. 2:20-cv-6414JCG(KKx)

I hereby certify that on this 7th day of December, 2020, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFFS' RESPONSE IN OPPOSITION TO NOTICE OF DEFENDANT'S INTENTION TO FILE AN OPPOSITION AND REQUEST FOR DELAYED HEARING**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of this State of California and the United States of America that the foregoing is true and correct and that this declaration was executed on December 7, 2020, at Lynchburg, Virginia.

| Daniel J. Schmid | /s/ Daniel J. Schmid |
|---|---|
| Declarant | Signature |

8